Joel A. Kauth, CA Bar No. 186544
E-mail: joel.kauth@kppb.com
Mark Yeh, CA Bar No. 307181
E-mail: mark.yeh@kppb.com
KPPB LLP
2190 S. Towne Centre Place, Suite 300
Anaheim, CA 92806
PH:   (949) 852-0000
Fax:  (949) 852-0004

Attorneys for Plaintiffs Steve Neville,
Substructure Support, Inc., and
TDP Support, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| STEVE NEVILLE, SUBSTRUCTURE SUPPORT, INC., and TDP SUPPORT, INC., | Case No. 2:17-cv-08929-AG (AGRx) |
| Plaintiffs, | **SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | Hon. Andrew J. Guilford |
| ALDRIDGE CONSTRUCTION, INC.; ALDRIDGE ELECTRIC, INC.; GONSALVES & SANTUCCI, INC.; HENSEL PHELPS CONSTRUCTION CO.; M-PILE SALES, LLC; MAGCO DRILLING, INC.; MATT CONSTRUCTION CORP.; SHORING ENGINEERS; and STRUCTURAL SHOTCRETE SYSTEMS, INC., | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

1    Plaintiffs STEVE NEVILLE ("Neville"), SUBSTRUCTURE SUPPORT,

2    INC. ("Substructure"), and TDP SUPPORT, INC. ("TDP") (collectively

3    "Plaintiffs") bring this action against ALDRIDGE CONSTRUCTION, INC. and

4    ALDRIDGE ELECTRIC, INC. (both Aldridge entities, collectively "Aldridge"),

5    GONSALVES & SANTUCCI, INC. ("Conco"), HENSEL PHELPS

6    CONSTRUCTION CO. ("Hensel Phelps"), M-PILE SALES, LLC ("M-Pile

7    Sales"), MAGCO DRILLING, INC. ("Magco"), MATT CONSTRUCTION

8    CORP. ("Matt Construction"), SHORING ENGINEERS ("Shoring"), and

9    STRUCTURAL SHOTCRETE SYSTEMS, INC. ("Structural Shotcrete")

10    (collectively "Defendants"), and for its causes of action alleges:

**JURISDICTION AND VENUE**

12    1.    This is an action for patent infringement in violation of the patent laws

13    of the United States, 35 U.S.C. § 1, et seq.  This Court has jurisdiction under 28

14    U.S.C. §§ 1331 and 1338(a).

15    2.    This is also an action for infringement of a federally registered

16    trademark, false designation of origin under the Lanham Act, and unfair

17    competition under federal, state, and common law.  This Court has jurisdiction

18    under 15 U.S.C. § 1121, 28 U.S.C. § 1331, 28 U.S.C. § 1338(a), 28 U.S.C. §

19    1338(b), 15 U.S.C.A. § 1126, and supplemental jurisdiction under 28 U.S.C. §

20    1367.

21    3.    Defendant Magco at least makes, uses, offers for sale, sells, and

22    imports infringing products into this judicial district, such that a substantial part of

23    the events giving rise to the claims against Magco occurred in this district.

24    Defendant Magco has a regular and established place of business in Azusa,

25    California.  Defendant Magco is also organized and existing under the laws of the

26    State of California.  Venue is proper under 28 U.S.C. § 1400(b) and 28 U.S.C. §

27    1391(b).

28    4.    Defendant Magco is the registrant for the website at the URL

SECOND AMENDED COMPLAINT FOR          2
PATENT INFRINGEMENT

1  www.magcodrilling.com, where said website is accessible within this judicial

2  district.

3       5.    Defendant Magco, through its principal and agent Michael C. Maggio,

4  is also the registrant for the website at the URL www.m-pile.com, on which the

5  infringing products (the "M-Pile" products) are advertised and offered for sale, and

6  where said website is accessible within this judicial district.  The website www.m-

7  pile.com lists "Magco Drilling, Inc" as the contractor who uses and sells the

8  infringing "M-Pile" product.  Furthermore, the www.m-pile.com website states that

9  "Magco Drilling, Inc" used the M-Pile product in the Los Angeles International

10  Airport (hereinafter, "LAX") Terminal Redevelopment Program (Terminals 7 and

11  8) project.

12       6.    Defendants Aldridge have acquired Magco, and have a regular and

13  established place of business with Magco in this judicial district, and are registered

14  to do business in California.  Therefore, Defendants Magco and Aldridge at least

15  make, use, offer for sale, and have sold infringing products in this judicial district,

16  such that a substantial part of the events giving rise to the claims against Magco

17  and Aldridge occurred in this district.  Venue is proper under 28 U.S.C. § 1400(b)

18  and 28 U.S.C. § 1391(b).

19       7.    On information and belief, Defendant M-Pile Sales at least imports,

20  offers for sale, and sells the infringing products in this judicial district, such that a

21  substantial part of the events giving rise to the claims against M-Pile Sales occurred

22  in this district.  On information and belief, Defendant M-Pile Sales has a regular

23  and established place of business in Azusa, California.  Venue is proper under 28

24  U.S.C. § 1400(b) and 28 U.S.C. § 1391(b).

25       8.    Defendant Shoring at least uses, offers for sale, and sells infringing

26  products in this judicial district, such that a substantial part of the events giving rise

27  to the claims against Shoring occurred in this district.  Defendant Shoring has a

28  regular and established place of business in Santa Fe Springs, California.

KPPB LLP

SECOND AMENDED COMPLAINT FOR
PATENT INFRINGEMENT

3

1   Defendant Shoring is also organized and existing under the laws of the State of
2   California.  Venue is proper under 28 U.S.C. § 1400(b) and 28 U.S.C. § 1391(b).

3       9.    Defendant Shoring is the registrant for the website at the URL
4   www.shoringengineers.com.  On its website, Shoring notes that it is licensed in
5   California.  Furthermore, on its website, Shoring states that it has worked on several
6   projects at NBC's Universal City and Universal Studios Hollywood located in
7   Universal City, California.

8       10.   Defendant Structural Shotcrete at least uses, offers for sale, and sells
9   infringing products in this judicial district, such that a substantial part of the events
10  giving rise to the claims against Shoring occurred in this district.  Defendant
11  Structural Shotcrete has a regular and established place of business in Santa Fe
12  Springs, California.  Defendant Structural Shotcrete is also organized and existing
13  under the laws of the State of California.  Venue is proper under 28 U.S.C. §
14  1400(b) and 28 U.S.C. § 1391(b).

15      11.   Defendant Shoring is the registrant for the website at the URL
16  www.structuralshotcrete.com, where said website is accessible within this judicial
17  district.  On this website, Structural Shotcrete states that it is licensed in California.

18      12.   Defendant Hensel Phelps at least uses, offers for sale, and sells
19  infringing products in this judicial district.  Defendant Hensel Phelps has a regular
20  and established place of business in Irvine, California.  Venue is proper under 28
21  U.S.C. § 1400(b) and 28 U.S.C. § 1391(b).

22      13.   On information and belief, Defendant Hensel Phelps operates and
23  controls the website at the URL www.henselphelps.com.

24      14.   Defendant Hensel Phelps states on its website that it has offices in
25  Northern and Southern California.  Furthermore, Hensel Phelps states on its
26  website that it has worked on the LAX Southwest Terminal 1.5 and the LAX
27  Terminal Redevelopment Program (Terminals 7 and 8) projects.

28      15.   Defendant Conco at least uses, offers for sale, and sells infringing

products in this judicial district.  Defendant Conco has a regular and established place of business in Fontana, California.  Venue is proper under 28 U.S.C. § 1400(b).

16.    On information and belief, Defendant Conco operates and controls the website at the URL www.conconow.com.

17.    Conco states on its website that it has offices in the Bay Area, Los Angeles, San Jose, Sacramento, and San Francisco, California.  Furthermore, Conco states on its website that it has worked on the LAX Midfield Satellite Concourse North project.

18.    Defendant Matt Construction at least uses, offers for sale, and sells infringing products in this judicial district.  Defendant Matt Construction has a regular and established place of business in Los Angeles, Santa Fe Springs, and Westlake Village, California.  Defendant Matt Construction is also organized and existing under the laws of the State of California.  Venue is proper under 28 U.S.C. § 1400(b) and 28 U.S.C. § 1391(b).

19.    Defendant Matt Construction is the registrant for the website at the URL www.mattconstruction.com.  On its website, Matt Construction states that it has offices in Los Angeles, Santa Fe Springs, Westlake Village, and Redwood Shores, California.  Furthermore, Matt Construction states on its website that Matt Construction worked the NBCUniversal Studios' Area 51 project located in Universal City, California.

20.    Furthermore, Defendants have substantial contacts with this district, have ongoing and systematic contacts with this judicial district, and have regularly conducted business within this judicial district, including ongoing usage and sales in this district, and, on information and belief, employment of sales personnel within this district.  Defendants have therefore purposefully availed themselves of the privilege of conducting business within this judicial district, and have purposefully directed activities at residents of this judicial district.

**PARTIES**

21.    Plaintiff Neville is an individual, having a residence in Winters, California.

22.    Plaintiff Substructure is a corporation organized and existing under the laws of California, and having a place of business at 4989-A Peabody Road, Fairfield, California 94533.

23.    Plaintiff TDP is a corporation organized and existing under the laws of California, and having a place of business at 4989-A Peabody Road, Fairfield, California 94533.

24.    On information and belief, both Defendant Aldridge Construction, Inc. (a Texas corporation) and Defendant Aldridge Electric, Inc. (a Delaware corporation) have a regular and established place of business at 501 W. Foothill Blvd., Azusa, California 91702.

25.    On information and belief, Defendant Magco is a corporation organized and existing under the laws of California, and having a regular and established place of business at 501 W. Foothill Blvd., Azusa, California 91702.

26.    On information and belief, Defendant M-Pile Sales is a limited liability company organized and existing under the laws of Utah.  On information and belief, Defendant M-Pile Sales has a regular and established place of business at 501 W. Foothill Blvd., Azusa, California 91702.

27.    On information and belief, Defendant Shoring is a corporation organized and existing under the laws of California, and having a regular and established place of business at 12645 Clark Street, Santa Fe Springs, California 90670.

28.    On information and belief, Defendant Structural Shotcrete is a corporation organized and existing under the laws of California, and having a regular and established place of business at 12645 Clark Street, Santa Fe Springs, California 90670.

SECOND AMENDED COMPLAINT FOR
PATENT INFRINGEMENT

29.    On information and belief, Defendant Structural Shotcrete shares the same address as Defendant Shoring at 12645 Clark St., Santa Fe Springs, CA 90670.

30.    On information and belief, Defendant Structural Shotcrete shares the same management team as Defendant Shoring.

31.    On information and belief, Defendant Hensel Phelps is a corporation organized and existing under the laws of Delaware, and having a regular and established place of business at 18850 Von Karman Avenue, Suite 100, Irvine, California 92612.

32.    On information and belief, Defendant Gonsalves & Santucci, Inc. is a corporation organized and existing under the laws of California, having a regular and established place of business at 13052 Dahlia Street, Fontana, California 92337, and does business as "The Conco Companies."

33.    On information and belief, Defendant Matt Construction is a corporation organized and existing under the laws of California, and having a regular and established place of business at 9814 Norwalk Blvd., Suite 100, Santa Fe Springs, California 90670.

## **FACTUAL BACKGROUND**

34.    Steve Neville is the inventor and owner of U.S. Pat. No. 7,914,236 entitled "Screw Pile Substructure Support System" (a copy of which is attached as Exhibit A) ("the '236 patent").

35.    Mr. Neville has licensed the '236 patent to Plaintiff TDP as the exclusive licensee for manufacturing, offering for sale, and selling screw pile substructure support systems in accordance with the '236 patent.  With respect to making, offering for sale, and selling patented screw pile substructure support systems, TDP holds substantially all rights in the '236 patent, including the right to sue for past and present infringement for unauthorized manufacturing, sale, and/or offer for sale of patented screw pile substructure support systems made in

1   accordance with the '236 patent.  Mr. Neville has licensed the '236 patent to
2   Plaintiff Substructure as the exclusive licensee for using screw pile substructure
3   support systems made in accordance with the '236 patent.  With respect to use of
4   the patented screw pile substructure support systems, Substructure holds
5   substantially all rights in the '236 patent, including the right to sue for past and
6   present infringement for unauthorized use of patented screw pile substructure
7   support systems made in accordance with the '236 patent.

8       36.     Steve Neville is the inventor and owner of U.S. Pat. No. 9,284,708
9   entitled "Screw Pile Substructure Support System" (a copy of which is attached as
10  Exhibit B) ("the '708 patent").

11      37.     Mr. Neville has licensed the '708 patent to Plaintiff TDP as the
12  exclusive licensee for manufacturing, offering for sale, and selling screw pile
13  substructure support systems in accordance with the '708 patent.  With respect to
14  making, offering for sale, and selling patented screw pile substructure support
15  systems, TDP holds substantially all rights in the '708 patent, including the right to
16  sue for past and present infringement for unauthorized manufacturing, sale, and/or
17  offer for sale of patented screw pile substructure support systems made in
18  accordance with the '708 patent.  Mr. Neville has licensed the '708 patent to
19  Plaintiff Substructure as the exclusive licensee for using screw pile substructure
20  support systems made in accordance with the '708 patent, and for practicing the
21  method for installing a screw pile substructure support system claimed in the '708
22  patent.  With respect to use of the patented screw pile substructure support systems,
23  and for practicing the patented methods, Substructure holds substantially all rights
24  in the '708 patent, including the right to sue for past and present infringement for
25  unauthorized use of patented screw pile substructure support systems made in
26  accordance with the '708 patent and unauthorized practice of methods claimed in
27  the '708 patent.

28      38.     Steve Neville is the owner of U.S. Pat. No. 9,587,362 entitled

"Systems and Methods for Coupling a Drill Rig to a Screw Pile" (a copy of which is attached as Exhibit C) ("the '362 patent").

39.     Mr. Neville has licensed the '362 patent to Plaintiff Substructure as the exclusive licensee for practicing the methods for preparing a screw pile for installation by a drill rig claimed in the '362 patent.   Substructure holds substantially all rights in the '362 patent, including the right to sue for past and present infringement for unauthorized practice of the methods claimed in the '362 patent.

40.     The above-referenced patents are collectively the "patents-in-suit."

41.     Defendants Aldridge and Magco have in the past and continue to at least make, use, offer for sale, sell, and import products that infringe one or more claims of each of the patents-in-suit and practice the patented methods in this judicial district.

42.     Defendant M-Pile Sales has in the past and continues to at least import, offer for sale, and sell products that infringe one or more claims of each of the patents-in-suit in this judicial district.

43.     Defendant Shoring has in the past and continues to use, offer for sale, and sell products that infringe one or more claims of each of the patents-in-suit, and is also practicing the patented methods in this judicial district.

44.     Defendant Structural Shotcrete has in the past and continues to use, offer for sale, and sell products that infringe one or more claims of each of the patents-in-suit, and is also practicing the patented methods in this judicial district.

45.     Defendant Hensel Phelps has in the past and continues to at least use, offer for sale, and sell products that infringe one or more claims of each of the patent-in-suit, and is also practicing the patented methods in this judicial district.

46.     Defendant Conco has in the past and continues to at least use, offer for sale, and sell products that infringe one or more claims of each of the patent-in-suit, and is also practicing the patented methods in this judicial district.

SECOND AMENDED COMPLAINT FOR
PATENT INFRINGEMENT

47. Defendant Matt Construction has in the past and continues to at least use, offer for sale, and sell products that infringe one or more claims of each of the patent-in-suit, and is also practicing the patented methods in this judicial district.

48. According to the Los Angeles World Airports website, the LAX Southwest Terminal 1.5 and the LAX Terminal Redevelopment Program (Terminals 7 and 8) projects were awarded to Defendant Hensel Phelps.

49. Hensel Phelps states on its website that it has worked on the LAX Southwest Terminal 1.5 and the LAX Terminal Redevelopment Program (Terminals 7 and 8) projects.

50. Conco states on its website that it has worked on the LAX Midfield Satellite Concourse North project.

51. Matt Construction states on its website that it has worked on the NBCUniversal Studios' Area 51 project.

52. Plaintiff Substructure is the owner of the federally registered trademark TORQUE DOWN®. The TORQUE DOWN® mark has been registered with the United States Patent and Trademark Office ("USPTO") as U.S. Registration No. 4,148,221 since May 29, 2012, and is incontestable.

53. Attached as Exhibit D is a true and correct copy of U.S. Registration No. 4,148,221 for the TORQUE DOWN® mark. The registration specifically includes goods and services in International Classes 6 and 37, including: "foundation piles, building materials used in conjunction with foundation piles, and foundation systems for substructure building support, all in the nature of steel pipe piles filled with concrete" and "installation of foundation piles and foundation systems for substructure building support and associated machinery."

54. Plaintiff TDP is authorized to use the TORQUE DOWN® mark. Plaintiff TDP makes, offers for sale, and sells a screw pile foundation system called the Torque Down® Pile. Plaintiff TDP applies the TORQUE DOWN® mark to the Torque Down® Pile product at the time of manufacture.

55.     Plaintiff Substructure uses the Torque Down® Pile products to practice the methods claimed in the '236 patent, the '362 patent, and the '708 patent.

56.     Since at least 2009, Plaintiff Substructure has continuously used its TORQUE DOWN® mark in commerce in connection with the marketing of the Torque Down® Pile products, as well as the installation of said Torque Down® Pile products for substructure building support and associated machinery.

57.     Plaintiff TDP marks each of the Torque Down® Pile products with the TORQUE DOWN® mark.

58.     Plaintiff Substructure has made a significant investment in advertising and promoting its TORQUE DOWN® mark.  More than 12,000 Torque Down® Piles products have been sold and used on residential and commercial construction projects throughout California and the United States.

59.     The TORQUE DOWN® mark is a source identifier for foundation piles, building materials used in conjunction with foundation piles, and foundation systems for substructure building support, all in the nature of steel pipe piles filled with concrete, provided by Plaintiff Substructure.

60.     The TORQUE DOWN® mark is also a source identifier for installation of foundation piles and foundation systems for substructure building support and associated machinery provided by Plaintiff Substructure.

61.     Plaintiff Substructure has previously sold the Torque Down® Pile product to consumers such as general contractors and project owners, including such entities as Webcor Builders, Swinerton Builders (Swinerton Incorporated), Cahill Contractors LLC, Hensel Phelps, Howard S. Wright (a Balfour Beatty company), and J.R. Roberts/Deacon.

62.     In addition to the rights granted by federal trademark registration, the TORQUE DOWN® mark also enjoys common law trademark protection as a result of Plaintiff Substructure's consistent and long-standing use of the TORQUE DOWN® mark in commerce, as well as its commitment to quality and investment

1 of time and effort in marketing and advertising.

2 **TORTIOUS ACTIVITIES OF DEFENDANT**

3 63. Defendants Aldridge and Magco have in the past and continue to
4 make, use, offer for sale, sell, and import products that infringe, either directly, or
5 indirectly through inducing infringement or contributory infringement, one or more
6 claims of each of the '236 and '708 patents. Such infringing products include,
7 without limitation, the M-Pile Full Displacement Pipe Pile System (hereinafter,
8 "M-Pile system").

9 64. Defendants Magco and Aldridge have also in the past and continue to
10 directly infringe by practicing the methods claimed in each of the '236, '708, and
11 '362 patents.

12 65. Defendant Magco has indirectly infringed the methods claimed in
13 each of the '236, '708, and '362 patents by inducing others to practice the claimed
14 methods, and providing a material or apparatus for use in practicing the claimed
15 methods, knowing the same to be especially made or especially adapted for use to
16 infringe the patents, and such material or apparatus is not a staple article or
17 commodity of commerce suitable for non-infringing use.

18 66. Defendant M-Pile Sales has in the past and continues to directly
19 infringe by importing, offering for sale, and selling products that infringe, either
20 directly, or indirectly through inducing infringement or contributory infringement
21 one or more claims of each of the '236 and '708 patents. Such infringing products
22 include, without limitation, the M-Pile system.

23 67. Defendant M-Pile Sales has indirectly infringed the methods claimed
24 in each of the '236, '708, and '362 patents by inducing others to practice the
25 claimed methods, and providing a material or apparatus for use in practicing the
26 claimed methods, knowing the same to be especially made or especially adapted
27 for use to infringe the patents, and such material or apparatus is not a staple article
28 or commodity of commerce suitable for non-infringing use.

68.   Defendant Shoring has in the past and continues to use, offer for sale, and sell products, such as the M-Pile system, that infringe one or more claims of each of the '236 and '708 patents.

69.   Defendant Shoring has also in the past and continues to directly infringe by practicing the methods claimed in each of the '236, '708, and '362 patents.

70.   Defendant Shoring has indirectly infringed the methods claimed in each of the '236, '708, and '362 patents by inducing others to practice the claimed methods, and providing a material or apparatus for use in practicing the claimed methods, knowing the same to be especially made or especially adapted for use to infringe the patents, and such material or apparatus is not a staple article or commodity of commerce suitable for non-infringing use.

71.   Defendant Structural Shotcrete has in the past and continues to use, offer for sale, and sell products, such as the M-Pile system, that infringe one or more claims of each of the '236 and '708 patents.

72.   Defendant Structural Shotcrete has also in the past and continues to directly infringe by practicing the methods claimed in each of the '236, '708, and '362 patents.

73.   Defendant Structural Shotcrete has indirectly infringed the methods claimed in each of the '236, '708, and '362 patents by inducing others to practice the claimed methods, and providing a material or apparatus for use in practicing the claimed methods, knowing the same to be especially made or especially adapted for use to infringe the patents, and such material or apparatus is not a staple article or commodity of commerce suitable for non-infringing use.

74.   On its website at the URL https://www.m-pile.com, Defendant Magco states that "M-Pile Full Displacement Pipe Pile system let's you 'screw' piles into the ground using a drilling rig…."

75.   Furthermore, the website lists "Magco Drilling, Inc" as a contractor

who uses and sells the infringing "M-Pile" product at the URL https://www.m-pile.com/casehistories.

76.  Defendant Magco's website at the URL https://m-pile.com/press also identifies Stephen Wilson as president of M-Pile Sales, LLC.

77.  Defendant Magco's M-Pile system includes a tubular pile with a centerline.

78.  Defendant Magco's M-Pile system includes attaching tubular piles to one another using welds.

79.  Defendant Magco's M-Pile system includes a substantially conically shaped pile tip.

80.  Defendant Magco's M-Pile system includes a helical flight on the exterior of the pile tip.

81.  A helical flight of Defendant Magco's M-Pile system extends along the exterior surface for a distance of at least one quarter of a circumference of the portion of the shaped pile tip.

82.  The pile tip of Defendant Magco's M-Pile system has a first end and a second end.

83.  In Defendant Magco's M-Pile system, the first end of the pile tip attaches to a tubular pile.

84.  Defendant Magco's M-Pile system includes an end plate attached to the second end of the pile tip.

85.  Defendant Magco's M-Pile system includes a protrusion extending from the end plate.

86.  Defendant Magco's M-Pile system includes cutter teeth attached to the pile tip.

87.  In Defendant Magco's M-Pile system, the tubular pile is filled with concrete and attached to a pile cap that includes concrete and reinforcing steel.

88.  Defendant Magco's M-Pile system is installed using a driver tool that

works with a drill rig.

89.   Defendant Magco's M-Pile system driver tool includes a bracket, a pivot, and a plate that connects to the drill rig.

90.   An end of Defendant Magco's M-Pile system driver tool fits inside a portion of a tubular pile.

91.   Defendant Magco's M-Pile system driver tool couples to a tubular pile utilizing pin holes in the tubular pile that are matched to holes in a portion of the driver tool.

92.   In Defendant Magco's M-Pile, the tubular pile is placed in a substantially horizontal position.

93.   In Defendant Magco's M-Pile, the driver tool is placed in a substantially horizontal position.

94.   In Defendant Magco's M-Pile, the driver tool and the tubular pile are attached to each other.

95.   In Defendant Magco's M-Pile, the driver tool is configured to pivot about a pivot axis.

96.   In Defendant Magco's M-Pile, a pile tip is attached to the tubular pile.

97.   Defendant Magco installs its M-Pile system, and instructs others to install its M-Pile system using this driver tool.

98.   Defendant Magco offers for sale and sells the infringing M-Pile system to others, intending for them to use and resell the M-Pile system.

99.   On information and belief, Defendant Aldridge offers for sale and sells the infringing M-Pile system to others, intending for them to use and resell the M-Pile system.

100.   On information and belief, Defendant M-Pile Sales offers for sale and sells the infringing M-Pile system to others, intending for them to use and resell the M-Pile system.

101.   Defendant Magco makes, uses, sells, offers for sale, and imports its

1  M-Pile system knowing it to infringe the patents-in-suit.

2      102.   On information and belief, Defendant Aldridge makes, uses, sells, and

3  offers for sale the M-Pile system knowing it to infringe the patents-in-suit.

4      103.   On information and belief, Defendant M-Pile Sales imports, sells, and

5  offers for sale the M-Pile system knowing it to infringe the patents-in-suit.

6      104.   Defendant Magco sells its infringing M-Pile system to others knowing

7  that such others will use and sell the infringing M-Pile system.

8      105.   Defendant Magco instructs those to whom it sells the M-Pile system

9  how to use and install the M-Pile system, instructing them to use the M-Pile system

10  in a manner that infringes the patents-in-suit.

11      106.   On information and belief, Defendant Magco sold the infringing M-

12  Pile system to Defendant Shoring.

13      107.   On information and belief, Defendant Magco instructed Defendant

14  Shoring on how to use the M-Pile system in a manner that infringes the patents-in-

15  suit, and Shoring used the M-Pile System in an infringing manner.

16      108.   On information and belief, Defendant Magco sold the infringing M-

17  Pile system to Defendant Structural Shotcrete.

18      109.   On information and belief, Defendant Magco instructed Defendant

19  Structural Shotcrete on how to use the M-Pile system in a manner that infringes the

20  patents-in-suit, and Structural Shotcrete used the M-Pile System in an infringing

21  manner.

22      110.   On information and belief, Defendant M-Pile Sales imports the M-Pile

23  system into the United States.

24      111.   On information and belief, Defendant M-Pile Sales thereafter offers

25  for sale and sells the infringing M-Pile system to others.

26      112.   On information and belief, Defendant Shoring used and sold the

27  infringing M-Pile system on at least one project at NBCUniversal in Universal City,

28  California.

113.   On information and belief, Defendant Shoring used and sold the infringing M-Pile system on at least one project at Los Angeles International Airport in Los Angeles, California.

114.   The M-Pile system used and sold by Shoring had the characteristics described above in paragraphs 77 through 96.

115.   On information and belief, Shoring installed the piling of the M-Pile system using Defendant Magco's driver tool.

116.   On information and belief, Defendant Structural Shotcrete used and sold the infringing M-Pile system on at least one project at NBCUniversal in Universal City, California.

117.   On information and belief, Defendant Structural Shotcrete used and sold the infringing M-Pile system on at least one project at Los Angeles International Airport in Los Angeles, California.

118.   The M-Pile system used and sold by Structural Shotcrete had the characteristics described above in paragraphs 77 through 96.

119.   On information and belief, Structural Shotcrete installed the piling of the M-Pile system using Defendant Magco's driver tool.

120.   Defendant Hensel Phelps is a general contractor.  Defendant Hensel Phelps puts out written requests for construction work which require the use of "torque down" piles.  These work requests include at least projects at LAX Southwest Terminal 1.5 and the LAX Terminal Redevelopment Program (Terminals 7 and 8).

121.   Defendant Hensel Phelps is not authorized to use the TORQUE DOWN® mark.

122.   Exemplary excerpts from Hensel Phelps work requests for the LAX Southwest Terminal 1.5 project and the LAX Terminal Redevelopment Program (Terminals 7 and 8) project requesting "Torque-Down-Pile" and "torque down" piles are included as follows:

LAX Southwest Terminal 1.5 project:

**11.2.5.   Torque-Down-Pile (TDP) Considerations**

A TDP consists of 12.75-inch-outside-diameter, 50 kips per square inch (ksi) steel pipe with a closed-end conical tip welded to the bottom of the pipe. The pipe wall thickness is 0.375 inch, resulting in an inside pipe diameter of 12 inches. The specially designed conical tip includes a single ½-inch-thick, 14-inch-diameter, steel helix plate welded onto the tip along with various cutting teeth to assist in the pile installation. The piles are advanced (screwed) into the ground by application of torque and crowd using a large drill rig.

LAX Terminal Redevelopment Program (Terminals 7 and 8) project:

Deep foundations are recommended to support the expansion of the Terminal 7 structure. The project team has selected torque down piles (TDP) as the preferred deep foundation type. Based on our experience and our preliminary discussion with LADB&S representatives, pile load testing will be required to use confirm the axial compression capacity of TDP foundations. LADB&S criteria will preclude the use of driven and/or vibratory pile installation methods for this project because of the proximity of adjacent structures that could be adversely affected by the construction vibrations. Cast-in-drilled-hole piles could be used but have schedule and cost disadvantages compared to TDPs. The design of the TDP foundations will need to consider the effects on the existing basement-level pedestrian tunnel and other subterranean structures.

A TDP is similar to a Caltrans cast-in-steel-shell (CISS) pile except that the TDP are installed by "screwing" (torqueing) the TDP into the ground compared to the CISS pile, which is installed by impact driving or vibratory methods. The TDP consists of a steel pipe pile with outside and inside diameters of 12¾ and 12 inches, respectively. A special ½-inch-thick conical tip with various cutter teeth forms the bottom of the TDP. After the TDP is screwed into the ground, the

123.    On information and belief, Defendant Hensel Phelps did not use the Torque Down® Pile product and instead used the M-Pile product, passing it off as the Torque Down® Pile product.

124.    On information and belief, Defendant Hensel Phelps utilized Aldridge to provide the infringing M-Pile products for at least the LAX Southwest Terminal 1.5 project.

125.    On information and belief, Defendant Hensel Phelps utilized Aldridge to install the infringing M-Pile products for at least the LAX Southwest Terminal 1.5 project.

126.    On information and belief, Defendant Hensel Phelps utilized Magco

1    to provide the infringing M-Pile products for at least the LAX Terminal

2    Redevelopment Program (Terminals 7 and 8) project.

3         127.   On information and belief, Defendant Hensel Phelps utilized Magco

4    to install the infringing M-Pile products for at least the LAX Terminal

5    Redevelopment Program (Terminals 7 and 8) project.

6         128.   Defendant Conco is a contractor.   On information and belief,

7    Defendant Conco used the infringing M-Pile product for the Midfield Satellite

8    Concourse North project at LAX.

9         129.   On information and belief, Defendant Conco utilized Shoring to

10   provide and/or install the infringing M-Pile products for the LAX Midfield Satellite

11   Concourse North project.

12        130.   On information and belief, Defendant Conco utilized Structural

13   Shotcrete to provide and/or install the infringing M-Pile products for the LAX

14   Midfield Satellite Concourse North project.

15        131.   Defendant Matt Construction is a general contractor.  Defendant Matt

16   Construction puts out written requests for construction work which require the use

17   of "Torque Down" Piles.  These work requests include at least the NBCUniversal

18   Studios' Area 51 project.

19        132.   Defendant Matt Construction is not authorized to use the TORQUE

20   DOWN® mark.

21        133.   An exemplary excerpt from the Matt Construction work request for

22   the NBCUniversal Studios' Area 51 project requesting "Torque Down" piles is

23   included as follows:

24        8.5    Torque Down Piles

25        Torque-down piles are concrete-filled steel pipe piles with a closed-end conical tip welded to the
         bottom of the pipe.  The pipe typically has inside and outside diameters of 12 and 12.75 inches,
26       respectively.  The specially designed conical tip includes a single ½-inch-thick, 14-inch-
27       diameter, steel-helix plate welded onto the tip along with various cutter teeth.  The piles are

28

"screwed" into the ground by applying torque and crowd (downward pressure) with a large drill rig. A specially designed hydraulic motor on the drill rig is capable of providing up to 210,000 ft-lbs of torque, enabling the piles to penetrate into very dense sand and weathered bedrock. A 30-ton main winch on the rig provides the necessary crowd. This method of pile installation results in little to no vibration, and noise is limited to the engine on the drill rig. After the piles are advanced to the specified tip elevation or to practical refusal, the pipes are filled with structural concrete.

### 8.5.1   Axial Capacity-Torque Down Piles

Preliminary recommendations for allowable axial capacities vs. depth for 12.75-inch outside diameter torque-down piles are provided in Figure 13. The axial capacity calculations incorporate skin friction and end bearing. A factor of safety of 2 is applied to the ultimate axial capacity for static loading condition. A one-third increase in the allowable axial capacity is used when considering wind or seismic loads. The depth of groundwater at 30 feet in the axial capacity analysis corresponds to the current groundwater level at the site, which is approximately 20 feet lower than the reported historic high. We believe that this is the more critical groundwater level with respect to pile axial capacity estimation.

### 8.5.2   Lateral Capacity-Torque Down Piles

The torque-down piles may be used to resist lateral loads. We performed lateral capacity calculations for 12.75-inch-diameter piles. We calculated allowable pile lateral capacity in accordance with Section 1810.3.3.2 of the 2013 California Building Code with 2014 County of Los Angeles Amendments and used the computer program "LPILE" in our pile lateral load analyses. The depth of groundwater at 10 feet in the lateral capacity analysis corresponds to the CDMG reported historic high for the site. We believe that this is the more critical groundwater level with respect to pile lateral capacity estimation.

134.   Defendant Matt Construction also states on its website that Matt Construction "had to use torque-down piles to drill into the ground" when working on the NBCUniversal Studios' Area 51 project.

135.   On information and belief, Defendant Matt Construction did not use the Torque Down® Pile product and instead used the M-Pile product, passing it off as the Torque Down® Pile product.

136.   On information and belief, Defendant Matt Construction utilized Shoring to provide the infringing M-Pile products for at least the NBCUniversal Studios' Area 51 project.

137.   On information and belief, Defendant Matt Construction utilized Shoring to install the infringing M-Pile products for at least the NBCUniversal Studios' Area 51 project.

138.   On information and belief, Defendant Matt Construction utilized Structural Shotcrete to provide the infringing M-Pile products for at least the NBCUniversal Studios' Area 51 project.

139.   On information and belief, Defendant Matt Construction utilized Structural Shotcrete to install the infringing M-Pile products for at least the NBCUniversal Studios' Area 51 project.

140.   On information and belief, Defendant Magco provided infringing M-Pile products for at least projects at the Discovery Science Center in Santa Ana, California.

141.   On information and belief, Defendant Magco installed infringing M-Pile products for at least projects at the Discovery Science Center in Santa Ana, California.

142.   Defendants' actions infringing the patents-in-suit have been and are without the consent or authorization of Plaintiffs.

143.   In February 2012, Michael C. Maggio of Magco signed an agreement that referred to the '236 patent, demonstrating Magco's knowledge of the '236 patent at least as early as February 2012.

144.   Defendant Magco previously worked with Plaintiffs Neville and Substructure, and has been aware of the '236 patent since at least as early as 2012.

145.   By letter from Plaintiff Substructure's counsel dated March 15, 2013, Substructure demanded that Magco cease and desist from "manufacture, use, importation, operation, use or sale of any product or method described in U.S. Patent No. 7,914,236."

146.   By that same letter, Plaintiff Substructure notified Magco that "[a]ny further manufacture, use, importation, operation, use or sale of any product or method described in U.S. Patent No. 7,914,236 shall be unlawful, will subject Magco to imposition of damages and injunctive relief, as well as punitive damages for willful conduct."

147.   In a letter of intent dated February 9, 2012, and signed by a principal of Magco, Michael C. Maggio, specific reference is made to the inventor Mr. Steve Neville and "a certain patent titled 'Screw Pile Substructure Support System,'" which is the '236 patent.

148.   On information and belief, in February 2012, Stephen Wilson, president of M-Pile Sales, was party to an agreement that referred to the '236 patent, demonstrating at least his knowledge of the '236 patent at least as early as February 2012.  This agreement was the same agreement signed by Michael C. Maggio of Magco, and specific reference was made therein to inventor Steve Neville and "a certain patent titled 'Screw Pile Substructure Support System,'" which is the '236 patent.

149.   Stephen Wilson of M-Pile Sales previously worked with Plaintiffs Neville and Substructure, and has been aware of the '236 patent since at least as early as 2012.

150.   By letter from Plaintiff Substructure's counsel dated March 28, 2013, Substructure demanded that Stephen Wilson cease and desist from placing "any new orders for TDP Tips with any supplier, or take orders from any customer."

151.   By that same letter, Plaintiff Substructure notified Stephen Wilson that "[a]ny further manufacture, importation, operation, use, or sale of any product or method described in U.S. Patent No. 7,914,236 without Steve Neville's written approval shall be unlawful."

152.   On information and belief, Defendants Magco and Aldridge make, use, offer to sell, sell, and import the M-Pile system which directly competes with Plaintiff Substructure's Torque Down® Pile product.

153.   On information and belief, Defendants Magco and Aldridge have sold and are selling the M-Pile system to others, passing it off as the TORQUE DOWN® pile system.  Defendants Magco's and Aldridge's passing off of the M-Pile system as the TORQUE DOWN® pile system is intentionally confusing and deceiving

customers into believing that the M-Pile system it provides is sponsored by, approved by, or otherwise affiliated with Plaintiff Substructure.

154.   Defendants Magco and Aldridge have sold the M-Pile system for use in at least the LAX Southwest Terminal 1.5 project.

155.   Defendants Magco and Aldridge have sold the M-Pile system for use in at least the LAX Terminal Redevelopment Program (Terminals 7 and 8) project.

156.   Defendants Magco and Aldridge have sold the M-Pile system for use in at least the Discovery Science Center project.

157.   On information and belief, Defendant M-Pile Sales imports, offers to sell, and sells the M-Pile system which directly competes with Plaintiff Substructure's Torque Down® Pile product.

158.   On information and belief, Defendant Shoring uses, offers to sell, and sells the M-Pile system which directly competes with Plaintiff Substructure's Torque Down® Pile product.

159.   On information and belief, Defendant Shoring has sold and is selling the M-Pile system to others, passing it off as the TORQUE DOWN® pile system in at least the LAX Midfield Satellite Concourse North project and the NBCUniversal Studios' Area 51 project.  Defendant Shoring's passing off of the M-Pile system as the TORQUE DOWN® pile system is intentionally confusing and deceiving customers into believing that the M-Pile system it provides is sponsored by, approved by, or otherwise affiliated with Plaintiff Substructure.

160.   On information and belief, Defendant Structural Shotcrete uses, offers to sell, and sells the M-Pile system which directly competes with Plaintiff Substructure's Torque Down® Pile product.

161.   On information and belief, Defendant Structural Shotcrete has sold and is selling the M-Pile system to others, passing it off as the TORQUE DOWN® pile system in at least the LAX Midfield Satellite Concourse North project and the NBCUniversal Studios' Area 51 project.  Defendant Structural Shotcrete's passing

off of the M-Pile system as the TORQUE DOWN® pile system is intentionally confusing and deceiving customers into believing that the M-Pile system it provides is sponsored by, approved by, or otherwise affiliated with Plaintiff Substructure.

162.   On information and belief, Defendant Hensel Phelps has sold and is selling the M-Pile system to project owners, passing it off as the TORQUE DOWN® pile system.  Defendant Hensel Phelps is at least using the TORQUE DOWN® mark in connection with the marketing, sale, and provision of the M-Pile system in at least the LAX Southwest Terminal 1.5 project and the LAX Terminal Redevelopment Program (Terminals 7 and 8) project.  Thus, the parties' respective goods are sold through identical channels of trade and to identical consumers.

163.  Defendant Hensel Phelps is intentionally infringing Plaintiff Substructure's TORQUE DOWN® mark, and is intentionally confusing and deceiving customers into believing that the M-Pile system it provides is sponsored by, approved by, or otherwise affiliated with Plaintiff Substructure.

164.   Defendant Hensel Phelps's unauthorized and infringing use of the TORQUE DOWN® mark commenced long after the registration and first use of the TORQUE DOWN® mark.

165.   On information and belief, Defendant Matt Construction has sold and is selling the M-Pile system to project owners, passing it off as the TORQUE DOWN® pile system.  Defendant Matt Construction is at least using the TORQUE DOWN® mark in connection with the marketing, sale, and provision of the M-Pile system in the NBCUniversal Studios' Area 51 project.  Thus, the parties' respective goods are sold through identical channels of trade and to identical consumers.

166.  Defendant Matt Construction is intentionally infringing Plaintiff Substructure's TORQUE DOWN® mark, and is intentionally confusing and deceiving customers into believing that the M-Pile system it provides is sponsored by, approved by, or otherwise affiliated with Plaintiff Substructure.

167.   Defendant Matt Construction's unauthorized and infringing use of the TORQUE DOWN® mark commenced long after the registration and first use of the TORQUE DOWN® mark.

## FIRST CAUSE OF ACTION

## PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271

168.   Plaintiffs refer to and incorporate in this cause of action the preceding Paragraphs above, as though restated herein in full.

169.   Defendants Magco and Aldridge have in the past and continue to make, use, import, offer for sale, and sell the M-Pile Full Displacement Pipe Pile System that infringes at least claims 1-4, 6-11, 14-19, 22-24, 27, 29, and 32 of the '236 patent.

170.   Defendants Magco, Aldridge, Shoring, Structural Shotcrete, Hensel Phelps, Conco, and Matt Construction have used and continue to use a method utilizing the M-Pile Full Displacement Pipe Pile System that infringes at least claim 33 of the '236 patent.

171.   Defendant M-Pile Sales has in the past and continues to import, offer for sale, and sell the M-Pile Full Displacement Pipe Pile System that infringes at least claims 1-4, 6-11, 14-19, 22-24, 27, 29, and 32 of the '236 patent.

172.   Defendants Shoring, Structural Shotcrete, Hensel Phelps, Conco, and Matt Construction have in the past and continue to use, offer for sale, and sell the M-Pile Full Displacement Pipe Pile System that infringes at least claims 1-4, 6-11, 14-19, 22-24, 27, 29, and 32 of the '236 patent.

173.   Defendants Magco and Aldridge have in the past and continue to make, use, import, offer for sale, and sell the M-Pile Full Displacement Pipe Pile System that infringes at least claims 1-23, 25, 27, and 39 of the '708 patent.

174.   Defendants Magco, Aldridge, Shoring, Structural Shotcrete, Hensel Phelps, Conco, and Matt Construction have used and continue to use a method utilizing the M-Pile Full Displacement Pipe Pile System that infringes at least

1    claims 31, 32, and 34-37 of the '708 patent.

2        175.   Defendant M-Pile Sales has in the past and continues to import, offer

3    for sale, and sell the M-Pile Full Displacement Pipe Pile System that infringes at

4    least claims 1-23, 25, 27, and 39 of the '708 patent.

5        176.   Defendants Shoring, Structural Shotcrete, Hensel Phelps, Conco, and

6    Matt Construction have in the past and continue to use, offer for sale, and sell the

7    M-Pile Full Displacement Pipe Pile System that infringes at least claims 1-23, 25,

8    27, and 39 of the '708 patent.

9        177.   Defendants Magco, Aldridge, Shoring, Structural Shotcrete, Hensel

10   Phelps, Conco, and Matt Construction have used and continue to use methods

11   utilizing the M-Pile Full Displacement Pipe Pile System that infringe at least claims

12   1, 3-5, 7-9, 11, 14, and 17-18 of the '362 patent.

13       178.   By these acts, Defendants have violated 35 U.S.C. § 271(a) by their

14   infringement of the patents-in-suit.

15       179.   On information and belief, Defendants' infringement of the patents-

16   in-suit, both presently, and in the past, has been willful.

17       180.   On information and belief, the acts of infringement of Defendants will

18   continue unless enjoined by this Court.

19       181.   Plaintiffs are being and will continue to be irreparably damaged by

20   Defendants' infringement of the patents-in-suit unless Defendants' infringement is

21   enjoined by this Court.  Plaintiffs, therefore, do not have an adequate remedy at

22   law.

23       182.   This is an "exceptional case" within the meaning of 35 U.S.C. § 285.

24              **SECOND CAUSE OF ACTION**

25       **INDIRECT PATENT INFRINGEMENT IN VIOLATION**

26              **OF 35 U.S.C. §§ 271(b) AND (c)**

27       183.   Plaintiffs refer to and incorporate in this cause of action the preceding

28   Paragraphs above, as though restated herein in full.

184.   On information and belief, Defendants Magco and Aldridge have in the past and continue to make, use, import, offer for sale, and sell the M-Pile System.

185.   On information and belief, Defendant M-Pile Sales has in the past and continues to import, offer for sale, and sell the M-Pile System.

186.   On information and belief, Defendants Magco and Aldridge have in the past and continue to supply the M-Pile System to others for use and/or resale.

187.   Magco, through at least Michael C. Maggio, had knowledge of the '236 patent at least as early as February 2012.

188.   On information and belief, Defendant M-Pile Sales has in the past and continues to supply the M-Pile System to others for user and/or resale.

189.   On information and belief, M-Pile Sales had knowledge of the '236 patent at least as early as February 2012.

190.   Plaintiff TDP is the exclusive manufacturer of products licensed under the patents-in-suit.

191.   Defendant Magco was notified at least as early as February 2012 that Plaintiffs had related pending patent applications that would likely cover the M-Pile System.

192.   On information and belief, Defendant M-Pile Sales was notified that Plaintiffs had related pending patent applications that would likely cover the M-Pile System.

193.   One such application issued as U.S. Pat. No. 9,284,701, and another issued as U.S. Pat. No. 9,587,362.

194.   Defendant Magco therefore had knowledge of U.S. Pat. No. 7,914,236 at least as early as February 2012.

195.   On information and belief, Defendant Magco had knowledge of U.S. Pat. No. 9,284,708 as of issue date March 15, 2016.

196.   On information and belief, Defendant Magco had knowledge of U.S.

Pat. No. 9,587,362 as of issue date March 7, 2017.

197.   On information and belief, Defendant M-Pile Sales had knowledge of U.S. Pat. No. 7,914,236 at least as early as February 2012.

198.   On information and belief, Defendant M-Pile Sales had knowledge of U.S. Pat. No. 9,284,708 as of issue date March 15, 2016.

199.   On information and belief, Defendant M-Pile Sales had knowledge of U.S. Pat. No. 9,587,362 as of issue date March 7, 2017.

200.   On information and belief, Defendants Magco, Aldridge, and M-Pile Sales have in the past and continue to import, offer for sale, sell, and supply the M-Pile System for use in practicing a patented process, which M-Pile System products are material to practicing the invention, have no substantial non-infringing uses, and are known by Defendants Magco, Aldridge, and M-Pile Sales to be especially made or especially adapted for use in an infringement of the patents-in-suit.

201.   The M-Pile System is used to directly infringe at least claims 1-4, 6-11, 14-19, 22-24, 27, 29, 32, and 33 of the '236 patent.

202.   The M-Pile System is used to directly infringe at least claims 1-23, 25, 27, 31, 32, 34-37, and 39 of the '708 patent.

203.   The M-Pile System is used to directly infringe at least claims 1, 3-5, 7-9, 11, 14, and 17-18 of the '362 patent.

204.   On information and belief, Defendant M-Pile Sales imports, receives, stores, and distributes the M-Pile System to others, intending that they use the M-Pile System to infringe the patents-in-suit.

205.   On information and belief, Defendant Magco has in the past and continues to supply the M-Pile System to others, intending that they use the M-Pile System to infringe the patents-in-suit.

206.   Defendants Shoring, Structural Shotcrete, Hensel Phelps, Conco, and Matt Construction have used the M-Pile System to infringe at least claims 1-4, 6-11, 14-19, 22-24, 27, 29, 32, and 33 of the '236 patent.

207. Defendants Shoring, Structural Shotcrete, Hensel Phelps, Conco, and Matt Construction have used the M-Pile System to infringe at least claims 1-23, 25, 27, 31, 32, 34-37, and 39 of the '708 patent.

208. Defendants Shoring, Structural Shotcrete, Hensel Phelps, Conco, and Matt Construction have used the M-Pile System to infringe at least claims 1, 3-5, 7-9, 11, 14, and 17-18 of the '362 patent.

209. The M-Pile System is used to construct a patented system, and to practice a patented method.

210. Through their importation, sales, supply, and distribution activities, Defendants Magco, Aldridge, and M-Pile Sales are liable for contributory infringement of the patents-in-suit pursuant to 35 U.S.C. § 271(c).

211. On information and belief, Defendants Magco, Aldridge, and M-Pile Sales have in the past and continue to import, sell, or offer for sale the M-Pile Full Displacement Pipe Pile System to enable users to practice a patented process or construct a patented system, with the knowledge that such acts constitute infringement of the patents-in-suit.

212. The M-Pile System is also used to practice a patented process, or construct a patented system, thereby directly infringing the patents-in-suit.

213. Defendants Magco, Aldridge, and M-Pile Sales provide specific instruction on how to use the M-Pile System to construct a patented system, and to practice a patented method.

214. Through such activities, Defendants Magco, Aldridge, and M-Pile Sales are liable for inducing infringement of the patents-in-suit, pursuant to 35 U.S.C. §§ 271(b).

215. On information and belief, Defendants Magco's, Aldridge's, and M-Pile Sales' inducement of infringement and contributory infringement of the patents-in-suit, both presently, and in the past, has been willful.

216. On information and belief, the acts of inducement of infringement and

1    contributory infringement of Defendants Magco, Aldridge, and M-Pile Sales will

2    continue unless enjoined by this Court.

3          217.   Plaintiffs are being damaged by Defendant's inducement of

4    infringement and contributory infringement of the patents-in-suit, and are currently

5    being, and will continue to be irreparably damaged unless Defendant's actions are

6    enjoined by this Court.  Plaintiffs, therefore, do not have an adequate remedy at

7    law.

8          218.   This is an "exceptional case" within the meaning of 35 U.S.C. § 285.

9                      **THIRD CAUSE OF ACTION**

10                 **TRADEMARK INFRINGEMENT IN VIOLATION**

11                      **OF 15 U.S.C. § 1114**

12         219.   Plaintiff Substructure refers to and incorporates in this cause of action

13   the preceding Paragraphs above, as though restated herein in full.

14         220.   Defendant Hensel Phelps, through the acts and omissions described

15   herein, has used, and is using, in commerce reproductions or colorable imitations

16   of Plaintiff's federally registered TORQUE DOWN® mark in connection with the

17   sale, offering for sale, distribution, or advertising of goods and services on or in

18   connection with which such use is likely to cause confusion, or to cause mistake,

19   or to deceive.

20         221.   Defendant Hensel Phelps, through the acts and omissions described

21   herein, has applied such reproductions or colorable imitations to labels, signs,

22   prints, packages, wrappers, receptacles, or advertisements intended to be used in

23   commerce upon or in connection with the sale, offering for sale, distribution, or

24   advertising of goods or services on or in connection with which such use is likely

25   to cause confusion, or to cause mistake, or to deceive.

26         222.   Defendant Matt Construction, through the acts and omissions

27   described herein, has used, and is using, in commerce reproductions or colorable

28   imitations of Plaintiff's federally registered TORQUE DOWN® mark in connection

with the sale, offering for sale, distribution, or advertising of goods and services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

223.   Defendant Matt Construction, through the acts and omissions described herein, has applied such reproductions or colorable imitations to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

224.   The infringements of Plaintiff Substructure's registered trademark, and each of them, as described, have irreparably injured Plaintiffs in an amount not yet ascertained but in an amount to be determined, which injury will continue unless enjoined by Order of this Court.

## FOURTH CAUSE OF ACTION

## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
## IN VIOLATION OF 15 U.S.C. § 1125

225.   Plaintiff Substructure refers to and incorporates in this cause of action the preceding Paragraphs above, as though restated herein in full.

226.   On information and belief, Defendant Magco's and Aldridge's provision and passing off of the M-Pile system to others in at least the LAX Southwest Terminal 1.5 project, the LAX Terminal Redevelopment Program (Terminals 7 and 8) project, and the Discovery Science Center project complained herein is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of such goods.

227.   On information and belief, the aforesaid acts of Defendants Magco and Aldridge were undertaken willfully with the intention of causing confusion, mistake, or deception.

228.   On information and belief, Defendant M-Pile Sales' provision of the

1  M-Pile system to others complained herein is likely to cause confusion, or to cause

2  mistake, or to deceive as to the origin, sponsorship, or approval of such goods.

3      229.   On information and belief, the aforesaid acts of Defendant M-Pile

4  Sales were undertaken willfully with the intention of causing confusion, mistake,

5  or deception.

6      230.   On information and belief, Defendant Shoring's provision and passing

7  off of the M-Pile system to others in at least the LAX Midfield Satellite Concourse

8  North project and the NBCUniversal Studios' Area 51 project complained herein

9  is likely to cause confusion, or to cause mistake, or to deceive as to the origin,

10  sponsorship, or approval of such goods.

11      231.   On information and belief, the aforesaid acts of Defendant Shoring

12  were undertaken willfully with the intention of causing confusion, mistake, or

13  deception.

14      232.   On information and belief, Defendant Structural Shotcrete's provision

15  and passing off of the M-Pile system to others in at least the LAX Midfield Satellite

16  Concourse North project and the NBCUniversal Studios' Area 51 project

17  complained herein is likely to cause confusion, or to cause mistake, or to deceive

18  as to the origin, sponsorship, or approval of such goods.

19      233.   On information and belief, the aforesaid acts of Defendant Structural

20  Shotcrete were undertaken willfully with the intention of causing confusion,

21  mistake, or deception.

22      234.   Defendant Hensel Phelps has used Plaintiff Substructure's TORQUE

23  DOWN® mark in connection with their goods and services in at least the LAX

24  Southwest Terminal 1.5 project and the LAX Terminal Redevelopment Program

25  (Terminals 7 and 8) project, where the advertising, promotion, and use of such

26  goods and services in commerce is likely to cause confusion, or to cause mistake,

27  or to deceive as to the origin, sponsorship, or approval of such goods.

28      235.   By using "Torque Down" and other very similar marks that are

1  identical to Plaintiff Substructure's TORQUE DOWN® mark, Defendant Hensel

2  Phelps misrepresents and falsely describes to the general public the origin and

3  source of the products and services offered for sale, and creates a likelihood of

4  confusion, mistake, or deception to ultimate purchasers as to the source of the

5  products.

6       236.   On information and belief, the aforesaid acts of Defendant Hensel

7  Phelps were undertaken willfully with the intention of causing confusion, mistake,

8  or deception.

9       237.   Defendant Matt Construction has used Plaintiff Substructure's

10  TORQUE DOWN® mark in connection with their goods and services in at least the

11  NBCUniversal Studios' Area 51 project, where the advertising, promotion, and use

12  of such goods and services in commerce is likely to cause confusion, or to cause

13  mistake, or to deceive as to the origin, sponsorship, or approval of such goods.

14       238.   By using "Torque Down" and other very similar marks that are

15  identical to Plaintiff Substructure's TORQUE DOWN® mark, Defendant Matt

16  Construction misrepresents and falsely describes to the general public the origin

17  and source of the products and services offered for sale, and creates a likelihood of

18  confusion, mistake, or deception to ultimate purchasers as to the source of the

19  products.

20       239.   On information and belief, the aforesaid acts of Defendant Matt

21  Construction were undertaken willfully with the intention of causing confusion,

22  mistake, or deception.

23       240.   The confusion, mistake, or deception referred to herein arises out of

24  the aforesaid acts of the above-mentioned Defendants, and the acts of said

25  Defendants constitute false designation of origin and unfair competition in

26  violation of 15 U.S.C. § 1125(a), Section 43(a) of the Lanham Act.

27       241.   By reason of acts of the above-mentioned Defendants, Plaintiff

28  Substructure has suffered and will continue to suffer irreparable damage, in an

KPPB LLP

SECOND AMENDED COMPLAINT FOR
PATENT INFRINGEMENT

33

1 amount not yet ascertained but in an amount to be determined, which damage will

2 continue unless and until such acts are enjoined by Order of this Court.

3 **FIFTH CAUSE OF ACTION**

4 **STATE STATUTORY UNFAIR COMPETITION**

5 242.   Plaintiffs refer to and incorporate in this cause of action the preceding

6 Paragraphs above, as though restated herein in full.

7 243.   By the acts complained of herein, Defendants Magco and Aldridge

8 have engaged in unfair competition under Section 17200 of the Business and

9 Professions Code of the State of California.

10 244.   On information and belief, Defendants Magco's and Aldridge's

11 provision of the M-Pile system to others complained herein constitutes unlawful,

12 unfair, fraudulent business practices, and deceptive and misleading advertising and

13 is likely to, and is intended to, cause confusion to the purchasers and potential

14 purchasers of the products.

15 245.   By the acts complained of herein, Defendant M-Pile Sales has

16 engaged in unfair competition under Section 17200 of the Business and Professions

17 Code of the State of California.

18 246.   On information and belief, Defendant M-Pile Sales' provision of the

19 M-Pile system to others complained herein constitutes unlawful, unfair, fraudulent

20 business practices, and is likely to, and is intended to, cause confusion to the

21 purchasers and potential purchasers of the products.

22 247.   By the acts complained of herein, Defendant Shoring has engaged in

23 unfair competition under Section 17200 of the Business and Professions Code of

24 the State of California.

25 248.   On information and belief, Defendant Shoring's provision of the M-

26 Pile system to others complained herein constitutes unlawful, unfair, fraudulent

27 business practices, and deceptive and misleading advertising and is likely to, and

28 is intended to, cause confusion to the purchasers and potential purchasers of the

products.

249.   By the acts complained of herein, Defendant Structural Shotcrete has engaged in unfair competition under Section 17200 of the Business and Professions Code of the State of California.

250.   On information and belief, Defendant Structural Shotcrete's provision of the M-Pile system to others complained herein constitutes unlawful, unfair, fraudulent business practices, and deceptive and misleading advertising and is likely to, and is intended to, cause confusion to the purchasers and potential purchasers of the products.

251.   By the acts complained of herein, Defendant Hensel Phelps has engaged in unfair competition under Section 17200 of the Business and Professions Code of the State of California.

252.   Defendant Hensel Phelps's use of the infringing advertising, marking, and promotion complained of herein constitutes unlawful, unfair, fraudulent business practices, and deceptive and misleading advertising and is likely to, and is intended to, cause confusion to the purchasers and potential purchasers of the products.

253.   By the acts complained of herein, Defendant Conco has engaged in unfair competition under Section 17200 of the Business and Professions Code of the State of California.

254.   On information and belief, Defendant Conco's provision of the M-Pile system to others complained herein constitutes unlawful, unfair, fraudulent business practices, and deceptive and misleading advertising and is likely to, and is intended to, cause confusion to the purchasers and potential purchasers of the products.

255.   By the acts complained of herein, Defendant Matt Construction has engaged in unfair competition under Section 17200 of the Business and Professions Code of the State of California.

256.   Defendant Matt Construction's use of the infringing advertising, marking, and promotion complained of herein constitutes unlawful, unfair, fraudulent business practices, and deceptive and misleading advertising and is likely to, and is intended to, cause confusion to the purchasers and potential purchasers of the products.

257.   On information and belief, the aforesaid acts of Defendants have caused damage to Plaintiff Substructure, in an amount not yet ascertained but in an amount to be determined.

258.   By reason of acts of Defendants, Plaintiff Substructure has suffered and will continue to suffer irreparable damage, in an amount not yet ascertained but in an amount to be determined, which damage will continue unless and until such acts are enjoined by Order of this Court.

## SIXTH CAUSE OF ACTION

## COMMON LAW TRADEMARK INFRINGEMENT

259.   Plaintiff Substructure refers to and incorporates in this cause of action the preceding Paragraphs above, as though restated herein in full.

260.   Since 2009, Plaintiff Substructure has continuously and exclusively used its TORQUE DOWN® mark.

261.   As noted in detail above, since at least as early as 2009, Plaintiff Substructure has used its TORQUE DOWN® mark in connection with goods and services in International Classes 6 and 37, including foundation piles, building materials used in conjunction with foundation piles, and foundation systems for substructure building support.

262.   Since at least 2009, Plaintiff Substructure has continuously used its TORQUE DOWN® mark in commerce in connection with the marketing of the Torque Down® Pile products.

263.   Through its continuous use of the TORQUE DOWN® mark, and its continued advertising and promotion, Plaintiff Substructure has established the

TORQUE DOWN® mark as a source identifier.   Plaintiff Substructure has established goodwill in its TORQUE DOWN® mark with consumers, and consumers recognize the TORQUE DOWN® pile as an indicator of the high quality goods and services provided by Plaintiff Substructure.

264.   On information and belief, Defendant Hensel Phelps was aware of the goodwill built up in Plaintiff Substructure's TORQUE DOWN® mark.

265.   On information and belief, Defendant Matt Construction was aware of the goodwill built up in Plaintiff Substructure's TORQUE DOWN® mark.

266.   On information and belief, in at least the LAX Southwest Terminal 1.5 project and the LAX Terminal Redevelopment Program (Terminals 7 and 8) project, Defendant Hensel Phelps used the TORQUE DOWN® mark in connection with goods and services provided to project owners.

267.   On information and belief, in at least the NBCUniversal Studios' Area 51 project, Defendant Matt Construction used the TORQUE DOWN® mark in connection with goods and services provided to project owners.

268.   Given the similar goods and services and the similar channels of trade in which they are offered, the above-mentioned Defendants' use of mark identical to Plaintiff Substructure's TORQUE DOWN® mark is likely to cause confusion, mistake, and/or deception among consumers.

269.   Plaintiff Substructure has suffered and will continue to suffer irreparable damage, in an amount not yet ascertained but in an amount to be determined, which damage will continue unless and until such use is enjoined by Order of this Court.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs Neville, Substructure, and TDP demand judgment against Defendants as follows:

1.   That this Court adjudge and declare:

SECOND AMENDED COMPLAINT FOR
PATENT INFRINGEMENT

a.   That it has jurisdiction of the parties and of the subject matter of this action;

b.   That United States Patent No. 7,914,236 ("the '236 patent") is valid;

c.   That United States Patent No. 9,284,708 ("the '708 patent") is valid;

d.   That United States Patent No. 9,587,362 ("the '362 patent") is valid;

e.   That all Defendants have committed acts of patent infringement by their manufacture, use, offer for sale, and sale of products and/or systems which infringe the patents-in-suit, and by their practicing of methods claimed by the patents-in-suit;

f.   That Defendants Magco, Aldridge, and M-Pile Sales have induced infringement of the patents-in-suit; and

g.   That Defendants Magco, Aldridge, and M-Pile Sales have contributorily infringed the patents-in-suit.

2.   That all Defendants, their officers, directors, owners, agents, representatives, employees, assigns and suppliers, and all persons acting in concert or privity with any of them be preliminarily and permanently enjoined from making, using, importing, offering for sale or selling any device and/or system, or practicing any method that infringes, either directly or indirectly through inducement or contributorily, the patents-in-suit;

3.   That Plaintiffs be awarded damages covered by the acts of patent infringement of all Defendants in the amount of Plaintiffs' lost profits to be determined at trial, but in any event, an amount not less than a reasonable royalty pursuant to 25 U.S.C. § 284;

4.   That Defendants Hensel Phelps and Matt Construction, their officers, directors, owners, agents, representatives, employees, assigns and suppliers, and all

persons acting in concert or privity with any of them be preliminarily and permanently enjoined from using the trademarks, advertising, packaging, and promotion of Plaintiffs, or any trademarks, advertising, packaging, and promotion likely to cause confusion, mistake, or deception with any of Plaintiff's trademarks, products, packaging, or trade dress.

5.    That Defendants Hensel Phelps and Matt Construction be required to immediately destroy all physical media, and immediately change all electronic media, including but not limited to web sites, applications, electronic files, graphics files, or other software in their possession or custody and/or under their control bearing the trademarks of Plaintiffs, or bearing any mark or symbol likely to cause confusion, mistake, or deception with any Plaintiff's trademark, product, or packaging.

6.    That Defendants Hensel Phelps and Matt Construction be required to pay Plaintiff Substructure for the cost of corrective advertising to address the confusion, mistake, and/or deception caused by defendants' unlawful acts alleged herein.

7.    Plaintiff Substructure has such other and further relief as the Court may deem appropriate to prevent the public from deriving the erroneous impression that any goods or services provided by or promoted by Defendants Magco, Aldridge, M-Pile Sales, Shoring, Structural Shotcrete, Hensel Phelps, and Matt Construction, are authorized by Plaintiff Substructure or related in any way to Plaintiff Substructure, its products, or services.

8.    That the damage award be trebled due to all Defendants' willful infringement;

9.    That all Defendants pay Plaintiffs prejudgment interest;

10.    That Plaintiffs have and recover their costs in this action, including attorneys' fees; and

//

SECOND AMENDED COMPLAINT FOR
PATENT INFRINGEMENT

1    11.    That Plaintiffs have such other and further relief as the court may

2  deem just and proper.

3

4  Dated:  February 20, 2018          Respectfully submitted,

5                                      KPPB LLP

6

7                                      By: /s/ Mark Yeh

8                                          Mark Yeh

9

10                                     Attorneys for Plaintiffs Steve Neville,
                                       Substructure Support, Inc., and TDP
11                                     Support, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>DEMAND FOR JURY TRIAL</u>**

2          Pursuant to Federal Rule of Civil Procedure Rule 38(b), Plaintiffs STEVE

3    NEVILLE, SUBSTRUCTURE SUPPORT, INC., and TDP SUPPORT, INC.

4    hereby demand a trial by jury of all issues in their Complaint so triable.

5

6

7    Dated:  February 20, 2018                    Respectfully submitted,

8                                                KPPB LLP

9

10                                               By: /s/ Mark Yeh

11                                                   Mark Yeh

12

13                                               Attorneys for Plaintiffs Steve Neville,
                                                 Substructure Support, Inc., and TDP
14                                               Support, Inc.

15

16

17   295818

18

19

20

21

22

23

24

25

26

27

28